## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JOHNATHON CLAYTON,** | : | |
| **Plaintiff** | : | **CIVIL ACTION NO. 3:23-0320** |
| **v.** | : | **(JUDGE MANNION)** |
| **DIANE SOMMER., *et al*.,** | : | |
| **Defendants** | : | |

## MEMORANDUM

### I. BACKGROUND

On February 22, 2023, Plaintiff, Johnathon Clayton, an inmate formerly confined at the Canaan United States Penitentiary,[1] ("USP-Canaan"), Waymart, Pennsylvania, filed the above caption <u>Bivens</u>[2] action, pursuant to 28 U.S.C. §1331, and the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §1346, for Defendants' alleged constitutional violations and negligence for the administration of "non-combinatory drugs." (Doc. 1). The named Defendants are the following USP-Canaan employees: Lieutenant Conner

---

[1] Plaintiff is currently housed in the Charleston Residential Reentry Center, North Charleston, South Carolina. (Doc. 24).
[2] Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971),

and the following USP-Physician's Assistants: H. Walters, Carey Rhea, and K. Oakley. Id.

Presently before the Court is Defendants' motion to dismiss and for summary judgment. (Doc. 11).  The motion is ripe for disposition. For the reasons that follow, the Court will grant Defendants' motion to dismiss and for summary judgment.

## II. MOTION TO DISMISS

Federal notice and pleading rules require the complaint to provide the defendant notice of the claim and the grounds upon which it rests. See Phillips v. Cty. of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008). The plaintiff must present facts that, accepted as true, demonstrate a plausible right to relief. See Fed. R. Civ. P. 8(a). Although Federal Rule of Civil Procedure 8(a)(2) requires "only a short and plain statement of the claim showing that the pleader is entitled to relief," a complaint may nevertheless be dismissed under Federal Rule of Civil Procedure 12(b)(6) for its "failure to state a claim upon which relief can be granted." See Fed. R. Civ. P. 12(b)(6).

When ruling on a motion to dismiss under Rule 12(b)(6), the court accepts as true all factual allegations in the complaint and all reasonable inferences that can be drawn from them, viewed in the light most favorable

to the plaintiff. See Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009); In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 314 (3d Cir. 2010). To prevent dismissal, all civil complaints must set out "sufficient factual matter" to show that their claims are facially plausible. See Iqbal, 556 U.S. at 678; Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009). The plausibility standard requires more than a mere possibility that the defendant is liable for the alleged misconduct: "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" See Iqbal, 556 U.S. at 679 (citing Fed. R. Civ. P. 8(a)(2)).

Accordingly, the Third Circuit has identified the following steps that a district court must take when reviewing a 12(b)(6) motion: (1) identify the elements that a plaintiff must plead to state a claim; (2) identify any conclusory allegations contained in the complaint that are "not entitled" to the assumption of truth; and (3) determine whether any "well-pleaded factual allegations" contained in the complaint "plausibly give rise to an entitlement to relief." See Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010) (internal citations and quotation marks omitted). The Third Circuit has specified that in ruling on a Rule 12(b)(6) motion to dismiss for failure to state a claim, "a court must consider only the complaint, exhibits attached to the

complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." See Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).

In the context of *pro se* prisoner litigation, the court must be mindful that a document filed *pro se* is "to be liberally construed." See Estelle v. Gamble, 429 U.S. 97, 106 (1976). A *pro se* complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can be dismissed for failure to state a claim only if it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. See Haines v. Kerner, 404 U.S. 519, 520-21 (1972).

## III. SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56(a) requires the court to render summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an

otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law. Id. at 248; Gray v. York Newspapers, Inc., 957 F.2d 1070, 1078 (3d Cir. 1992). An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson, 477 U.S. at 257; Brenner v. Local 514, United Bhd. of Carpenters and Joiners of Am., 927 F.2d 1283, 1287-88 (3d Cir. 1991).

When determining whether there is a genuine issue of material fact, the court must view the facts and all reasonable inferences in favor of the nonmoving party. Moore v. Tartler, 986 F.2d 682 (3d Cir. 1993); Clement v. Consol. Rail Corp., 963 F.2d 599, 600 (3d Cir. 1992); White v. Westinghouse Electric Co., 862 F.2d 56, 59 (3d Cir. 1988). To avoid summary judgment, however, the nonmoving party may not rest on the unsubstantiated allegations of his or her pleadings. When the party seeking summary judgment satisfies its burden under Rule 56 of identifying evidence which demonstrates the absence of a genuine issue of material fact, the nonmoving party is required by Rule 56 to go beyond his pleadings with affidavits,

depositions, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). The party opposing the motion "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Electric Indus. Co. v. Zenith Radio, 475 U.S. 574, 586 (1986). When Rule 56 shifts the burden of production to the nonmoving party, that party must produce evidence to show the existence of every element essential to its case which it bears the burden of proving at trial, for "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex, 477 U.S. at 323. See Harter v. G.A.F. Corp., 967 F.2d 846, 851 (3d Cir. 1992).

In determining whether an issue of material fact exists, the court must consider the evidence in the light most favorable to the nonmoving party. White, 862 F.2d at 59. In doing so, the Court must accept the nonmovant's allegations as true and resolve any conflicts in his favor. Id. (citations omitted). However, a party opposing a summary judgment motion must comply with Local Rule 56.1, which specifically directs the oppositional party to submit a "statement of the material facts, responding to the numbered paragraphs set forth in the statement required [to be filed by the movant], as

to which it is contended that there exists a genuine issue to be tried"; if the nonmovant fails to do so, "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed to be admitted." L.R. 56.1. A party cannot evade these litigation responsibilities in this regard simply by citing the fact that he is a pro se litigant. These rules apply with equal force to all parties. See Sanders v. Beard, No. 09-CV-1384, 2010 WL 2853261, at *5 (M.D. Pa. July 20, 2010) (pro se parties "are not excused from complying with court orders and the local rules of court"); Thomas v. Norris, No. 02-CV-01854, 2006 WL 2590488, at *4 (M.D. Pa. Sept. 8, 2006) (pro se parties must follow the Federal Rules of Civil Procedure).

## IV. STATEMENT OF MATERIAL FACTS[3]

Plaintiff, Johnathon Clayton, is a federal inmate serving an aggregate ninety-six-month term of imprisonment for a conviction of Bank Robbery by Force, a violation of 18 U.S.C. §2113(A). (Doc. 14-3 at 3, Inmate Data). He has a projected release date of August 8, 2024. Id. Clayton was housed at the USP-Canaan from November 2, 2021, to December 28, 2021. (Doc. 14-4 at 2, Inmate History). Clayton was medically assessed for the first time on November 2, 2021, when received at USP-Canaan from Federal Transfer Center, Oklahoma City ("OKL"). (Doc. 14-8 at 36-44, medical records). During the assessment, Clayton was noted to have a history of "seizures, diabetes, hypertension, suicide attempts, a C-Pap, and medical shoes (for

---

[3] The Local Rules of Court provide that in addition to filing a brief in opposition to the moving party's brief in support of its motion, "[t]he papers opposing a motion for summary judgment shall include a separate, short and concise statement of material facts responding to the numbered paragraphs set forth in the statement [of material facts filed by the moving party]...as to which it is contended that there exists a genuine issue to be tried." M.D. Pa. L.R. 56. 1. The Rule further requires the inclusion of references to the parts of the record that support the statements. Id. Finally, the Rule states that the statement of material facts required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party. See id. Unless otherwise noted, the factual background herein is taken from Defendants' Rule 56.1 statement of material facts. (Doc. 14). Plaintiff did not file a response to Defendants' statement of facts in compliance with M.D. Pa. L.R. 56.1. Thus, the Court deems the facts set forth by Defendants to be undisputed. See M.D. Pa. LR 56. 1; Fed. R. Civ. P. 56(e)(2).

diabetes)." Id. Clayton had numerous prescriptions from his incarceration at OKL to treat his hypertension and diabetes. Id. For his hypertension, Clayton had been prescribed amlodipine, hydrochlorothiazide, lisinopril, and prazosin. Id. For amlodipine, he took 10mg by mouth every day, Nov. 1 – 30, at 6:00am pill line. Id. (Doc. 14-8 at 60). For hydrochlorothiazide, he took 25 orally every day, Nov. 1 – 30, at the 6:00am pill line. Id. For lisinopril, he took 20mg orally every day, Nov. 1 – 30, at the 6:00am pill line. Id. For prazosin, he took 2mg orally every day at 6 p.m., from Nov. 1 – 28, until it was discontinued by the ER doctor. Id.

On November 5, 2021, Clayton was provided with glucose tablets due to low blood-glucose (BG) levels after being called by SHU Correctional Officers. (Doc. 14-8 at 32).

On November 23, 2021, PA Walters reviewed his blood sugar readings, noting "review of blood sugars since insulin adjustment show most in mid-100 range - a few high 100s and low 200s but overall stable." (Doc. 14-8 at 26). PA Walters also noted that his "BP elevated, he states he has not received his [Hydrochlorothiazide]- but review of medications looks like he received 11/10/21- will verify with pharmacy and repeat BP check on or around 2 weeks." (Id. at 27).

On November 28, 2021, at around 12:45 a.m., Clayton was found unresponsive in his cell. (Doc. 14-6 at 5). Clayton was placed into a stair chair and escorted to the Lieutenant's Complex. Id. BOP staff called 911. Id. Commonwealth Health EMS were notified of an Advance Life Support emergency at USP-Canaan involving Clayton on November 28, 2021, at 12:49 a.m. (Doc. 14-7 at 10-15). An EMS team was dispatched to USP Canaan at 12:53 a.m. Id. The EMS team arrived on scene at 1:35 a.m. and met with Clayton at 1:43 a.m. Id. The EMS team noted that their travel time was delayed due to snowy conditions. Id. at 13. When the EMS team arrived, however, a Basic Life Support team had also been dispatched and was assisting the inmate. Id. Clayton was transported to Wayne County Memorial Hospital via the Advance Life Support team, starting at 2:15 a.m. Id. Clayton arrived at Wayne County Memorial Hospital at 2:50 a.m. Id. At 1:45 a.m., EMS noted that Clayton had a regular, weak pulse of 78 beats per minute, his blood pressure was 91/63, his respirations were 17, and his oxygen saturation was 99%. Id. at 11. At 2:21 a.m., Clayton's pulse had improved to regular strength with 82 beats per minute, his blood pressure was 118/79, and his respirations and oxygen saturation remained normal. Id. At 2:40 a.m., immediately prior to arriving at Wayne County Memorial Hospital, Clayton's pulse was weak again with 88 beats per minute, and his blood pressure had

fallen to 89/63. Id. EMS described Clayton as a tall, black, adult male, weighing approximately 350 pounds. Id. Upon arrival, Clayton indicated that he felt light-headed, dizzy, and nauseous. Id. Clayton further informed EMS that he took his blood pressure medications for the first time in a month that day. Id. Clayton claimed that he had not been provided blood pressure medications prior to that day. Id. EMS documented that BOP staff had tried to feed Clayton, fearing he was suffering a diabetic episode. Id.

At 3:32 a.m., emergency medicine specialist Dr. Richard Brannan evaluated Clayton. (Doc. 14-7 at 2-9). According to Dr. Brannan's note, Clayton indicated that he had taken his blood pressure medication for difficulty sleeping. Id. Clayton also claimed that he had begun a new blood pressure medication that day. Id. Dr. Brannan ordered IV fluids, and Clayton's blood pressure slowly improved. Id. Dr. Brannan diagnosed Clayton with an adverse drug effect, noting he had previously discontinued blood pressure medications, and he instructed Clayton to stop taking Prazosin. Id. Clayton was discharged that morning at 5:52 a.m. Id. Later that morning, at approximately 7:00 a.m., Clayton was back at USP Canaan and underwent a Medical Trip Return Encounter. (Doc. 14-8 at 16-20). During the encounter, Clayton's known medication list was indicated to include Amlodipine, Glucose, Hydrochlorothiazide, Lisinopril, Oxcarbazepine,

Prazosin, Metformin, and Insulin. Id. Clayton was advised to stop taking Prazosin until he was able to meet with his physician. Id. PA Walters did not provide any other medical care or any medication to Clayton following the November 23, 2021 assessment. Paramedic Kenneth Oakley did not provide any medication to Clayton after November 22, 2021. PA Rhea Carey did not provide medical care or medication to inmate Clayton in November 2021.

On February 14, 2022, while confined at USP-Coleman, Clayton filed Administrative Remedy 1110608-F1, alleging medical malpractice related to an incident which occurred on November 28, 2021. (Doc. 14-5 at 5-6).

On February 16, 2022, Remedy Number 1110608-F1 was rejected for being untimely filed. Id.

On March 29, 2022, Clayton filed Regional Administrative Remedy Appeal 1110608-R1 with the Northeast Regional Office. Id.

On March 30, 2022, the Regional Office rejected Administrative Remedy 1110608-R1, "concur[ring] with the rationale of institution for rejection." Id.

On May 13, 2022, Clayton filed Central Office Administrative Remedy Appeal 1110608-A1 with the Central Office. Id.

On June 2, 2022, the Central Office rejected Remedy Number 1110608-A1, and instructed Clayton, "[i]f staff provide a memo stating the

late filing was not your fault, then re-submit to the level of the original rejection." Id. Clayton filed no additional administrative remedies since May 13, 2022. Id.

## V. DISCUSSION

### A. Bivens Action

Defendants move for summary judgment, arguing that the Prison Litigation Reform Act ("PLRA"), codified as 42 U.S.C. §1997e, bars Plaintiffs claims as Plaintiff failed to exhaust his administrative remedies. (Doc. 15 at 15-17).

The PLRA precludes a prisoner from contesting prison conditions in federal court until he has exhausted "all avenues of relief available to [him] within their prison's inmate grievance system." Spruill v. Gillis, 372 F.3d 218, 227 (3d Cir. 2004). Specifically, the PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. §1997e(a).

The "PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular

episodes, and whether they allege excessive force or some other wrong."

Porter v. Nussle, 534 U.S. 516, 532 (2002); see also Coulston v. Glunt, 665 F. App'x 128, 132 (3d Cir. 2016). A plaintiff must pursue to completion all available administrative remedies, even if they are not "plain, speedy, and effective," do "not meet federal standards," or could not result in the requested relief. Porter, 534 U.S. at 524.

These requirements serve three important functions: "(1) allowing the appropriate agency to develop a factual record and apply its expertise facilitates judicial review; (2) permitting agencies to grant the relief requested conserves judicial resources; and (3) providing agencies the opportunity to correct their own errors fosters administrative autonomy." Moscato v. Fed. Bureau of Prisons, 98 F.3d 757, 761–62 (3d Cir. 1996); see also Gambino v. Morris, 134 F.3d 156, 171 (3d Cir. 1998); Lyons v. U.S. Marshals, 840 F.2d 202, 205 (3d Cir. 1988).

Failure to exhaust is an affirmative defense, and as such, defendants have the burden to prove that a plaintiff has failed to exhaust. Small v. Camden Cty., 728 F.3d 265, 268 (3d Cir. 2013). To determine whether a prisoner has exhausted his administrative remedies, the Court looks to the agency's applicable grievance procedures and rules, in this case, the Bureau of Prisons ("BOP"). See Jones v. Bock, 549 U.S. 199, 218 (2007). The

Federal Bureau of Prisons ("BOP") has a four-step administrative-remedies process federal inmates must complete to satisfy the PLRA's exhaustion requirement. See 28 C.F.R. §§542.10-542.19. First, an inmate must informally present an issue of concern to the staff for collaborative resolution. See 28 C.F.R. §542.13(a). Second, if the inmate is dissatisfied with the informal resolution of the issue, the inmate must submit a formal, written Administrative Remedy Request on a BP–9 form for resolution by the Warden within 20 days following the date on which the basis for the Request occurred. See 28 C.F.R. §542.14. Third, an inmate who is not satisfied with the Warden's response may submit an appeal on a BP–10 form to the Regional Director within 20 days from the date that the Warden signed the response. See 28 C.F.R. §542.15. Fourth, an inmate who is not satisfied with the Regional Director's response may submit a final appeal on a BP-11 form to the General Counsel at the Central Office of Appeals within 30 calendar days of the Regional Director's signed response. See id.

Where an administrative procedure is "available," plaintiffs seeking to challenge prison conditions must fully and properly exhaust their administrative remedies prior to filing suit, and exceptional circumstances will not excuse their failure to exhaust. E.g., Ross v. Blake, 578 U.S. 632, 639–41 (2016) ("But aside from [where an administrative procedure is

unavailable], the PLRA's text suggests no limits on an inmate's obligation to exhaust—irrespective of any 'special circumstances.' And that mandatory language means a court may not excuse a failure to exhaust, even to take such circumstances into account."); Neal v. Powell, No. 17-4768, 2023 WL 4118347, at *3 (D.N.J. June 22, 2023). Indeed, both the "Supreme Court and [the Third Circuit] have rejected judge-made exceptions to the PLRA." Downey v. Pa. Dep't of Corr., 968 F.3d 299, 305 (3d Cir. 2020).

Rather, as the statute provides, it is only where the administrative procedure is "unavailable," that a court may excuse a failure to exhaust. Ross, 578 U.S. at 642. Generally, an administrative procedure is not available: (1) "when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief";[4] (2) when the procedure is "so opaque that it becomes, practically speaking, incapable of use"; and (3) when "prison administrators thwart inmates from taking advantage of a

---

[4] As the Supreme Court explained, "[s]uppose, for example, that a prison handbook directs inmates to submit their grievances to a particular administrative office—but in practice that office disclaims the capacity to consider those petitions. The procedure is not then 'capable of use' for the pertinent purpose." Ross, 578 U.S. at 643.

grievance process through machination, misinterpretation, or intimidation."

Id. at 642–44.

> In this case, Defendants assert:

> Clayton first attempted to initiate the administrative remedy process approximately four months after the incidents giving rise to his lawsuit occurred, when regulations required him to submit an informal resolution attempt and his formal administrative remedy request at the institutional level within 20 days. 28 C.F.R. §§542.13(a)-542.14. His untimely submission prevented fulfillment of the objectives of the exhaustion requirement by permitting BOP officials at USP-Canaan from addressing his claims and created a procedural barrier which prevented his ability to properly comply with the BOP's deadlines and procedural rules. See Woodford, 548 U.S. at 90.

(Doc. 15 at 16-17).

Clayton has not responded to Defendants' exhaustion argument in his brief in opposition. (See Doc. 18). Clayton, therefore, has not refuted the defense that he failed to properly exhaust his Bivens claims prior to filing suit in this Court. Based on Defendants' statements of material facts and the evidentiary materials and the lack of opposing evidentiary materials, the Court concludes that there are no triable issues of material fact regarding the issue of exhaustion of administrative remedies and that Defendants are entitled to judgment as a matter of law.

Accordingly, because the PLRA requires full and proper exhaustion prior to the initiation of Clayton's Bivens claims in federal court, and this Court

cannot excuse compliance with those requirements, Defendants' motion for summary judgment will be granted on the basis that Clayton failed to properly exhaust his administrative remedies with respect to his <u>Bivens</u> claims.

### B. **FTCA**

The FTCA "provides a mechanism for bringing a state law tort action against the federal government in federal court," and the "extent of the United States' liability under the FTCA is generally determined by reference to state law." <u>See</u> <u>In re Orthopedic Bone Screw Prod. Liab. Litig.</u>, 264 F.3d 344, 362 (3d Cir. 2001) (quoting <u>Molzof v. United States</u>, 502 U.S. 301, 305 (1992)).

As a sovereign, the United States is immune from suit unless it consents to be sued. <u>United States v. Mitchell</u>, 445 U.S. 535, 538 (1980) (quoting <u>United States v. Sherwood</u>, 312 U.S. 584, 586 (1941)). Its consent to be sued must be "unequivocally expressed," and the terms of such consent define the court's subject matter jurisdiction. <u>Sherwood</u>, 312 U.S. at 586. (quotations omitted). The FTCA operates as a limited waiver of the United States' sovereign immunity. <u>White–Squire v. U.S. Postal Serv.</u>, 592 F.3d 453, 456 (3d Cir. 2010) (citing <u>Roma v. United States</u>, 344 F.3d 352, 362 (3d Cir. 2003)). Under the FTCA, the United States is liable "in the same manner and to the same extent as a private individual under like

circumstances." 28 U.S.C. §2674. An incarcerated FTCA plaintiff may sue only the United States, may seek only monetary damages, and may not recover for mental or emotional damages in the absence of physical injury. See 28 U.S.C. §1346(b)(1)-(2); CNA v. United States, 535 F.3d 132, 138 n.2 (3d Cir. 2008).

A plaintiff suing under the FTCA must present the offending agency with notice of the claim, including a "sum certain" demand for monetary damages. See White–Squire, 592 F.3d at 457. "Because the requirements of presentation and a demand for a sum certain are among the terms defining the United States['] consent to be sued, they are jurisdictional." White–Squire, 592 F.3d at 457 (citing Sherwood, 312 U.S. at 586; Bialowas v. United States, 443 F.2d 1047, 1049 (3d Cir. 1971) (noting that the requirement to present a claim to the agency "is jurisdictional and cannot be waived") (citation omitted)). "In other words, if a plaintiff has not complied with the FTCA's pleading requirements, a district court has no subject matter jurisdiction over the claim." Palmer v. United States, No. 21-11721, 2022 WL 310208, at *4 (D.N.J. Feb. 1, 2022) (internal quotation marks omitted). "[W]e should not take it upon ourselves to extend the waiver beyond that which Congress intended." United States v. Kubrick, 444 U.S. 111, 117-18 (1979).

As an initial matter, Clayton appears to assert his FTCA claims against the individual employees of USP-Canaan, rather than the United States. (Doc. 1). Clayton cannot, however, maintain a claim against Defendants, as the United States is the only proper defendant for an FTCA claim. See, e.g., CNA, 535 F.3d at 138 n.2. ("The Government is the only proper defendant in a case brought under the FTCA."); see also 28 U.S.C. §1346(b)(1)–(2). Accordingly, the Court will dismiss Clayton's FTCA claims against Defendants for lack of jurisdiction.

However, even if this Court were to substitute the United States as the proper party, the Court would nevertheless dismiss these claims for lack of jurisdiction, as Clayton failed to exhaust his administrative remedies. Plaintiff's complaint fails to make any reference to a notice of tort claim, a demand for a sum certain, or that Plaintiff has otherwise exhausted his FTCA claim. Moreover, according to the BOP's computerized records, Clayton has not submitted an administrative tort claim to the agency during his incarceration. (Doc. 14-5). Plaintiff does not refute this.

Accordingly, because Clayton's FTCA claims fail to sue the proper party and because even if the Court substitutes the United States as the proper party, Clayton failed to exhaust his administrative remedies prior to initiating suit, the Court will grant Defendants' motion and dismiss the FTCA

claims for lack of subject matter jurisdiction. See Lampon-Paz v. Dep't of Just., No. 16-9071, 2019 WL 2098831, at *6 (D.N.J. May 14, 2019), aff'd, 793 F. App'x 137 (3d Cir. 2019).

## VI. CONCLUSION

For the foregoing reasons, the Court will grant Defendants' motion to dismiss and for summary judgment.

A separate Order shall issue.

*s/ Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**DATE: March 25, 2024**
23-0320-01